**ALI'ILELEI PHIL LAOLAGI, Claimant,**

**v.**

**NOFOAIGA L. SUALEVAI and**
**FONOTI SAVALI VAEAO, Counterclaimants.**

---

**[In re Matai Title LAOLAGI of the Village of Sili]**

High Court of American Samoa
Land and Titles Division

MT No. 03-01

July 21, 2004

Before RICHMOND, Associate Justice, SAGAPOLUTELE, Associate Judge, MAMEA, Associate Judge, and TAPOPO, Associate Judge.

Counsel: For Claimant, Tauivi Tuinei
For Counterclaimant Nofoaiga L. Sualevai, Asaua Fuimaono
For Counterclaimant Fonoti Savali Vaeao, Arthur Ripley, Jr.

## OPINION AND ORDER

On July 10, 2000, Claimant Ali`ilelei Phil Laolagi ("Ali`ilelei") claimed the *matai* title Laolagi of the village of Sili in the Manu`a Islands for registration with the Territorial Registrar. Ali`ilelei's claim drew timely objections and counterclaims by Counterclaimants Nofoaiga L. Sualevai ("Sualevai") and Fonoti Savali Vaeao ("Fonoti"). On January 26, 2001, after unsuccessful mediation, the Secretary of Samoa Affairs issued a certificate of irreconcilable dispute, jurisdictionally mandated by A.S.C.A. § 43.0302. The dispute was then referred to this Court for judicial resolution. Trial took place on April 15, 19 and 20, 2004. The three claimants for the title were present with their counsel throughout the trial proceedings. The Court, having considered the testimony and other evidence, awards the *matai* title Laolagi to Fonoti.

### Discussion

### I. Sualevai's Eligibility

When the trial began on April 15, 2004, Fonoti's motion questioning Sualevai's eligibility to claim to the Laolagi title was pending. The Court indicated that the evidentiary basis on the issue should be presented during the course of the trial for the Court's ruling on the motion when rendering the decision on awarding the title. The issue raised by the motion is whether or not Sualevai's physical residency in American Samoa for less than one year prior to filing his counterclaim on September 11, 2000, to succeed to the title, as required by A.S.C.A. § 1.0404(a) is excused under A.S.C.A. §§ 1.0404(b), (c), and (d).

A.S.C.A. § 1.0404(b)(2) excepts service in United States armed forces from the one year residency requirement for persons who are domiciled as permanent residents of American Samoa. Sualevai served in the U.S. Navy under a program that permitted him, after 20 years on active duty, to transfer to the Fleet Reserve to complete 30 years of Naval service. He actually served on active duty for 22 years and in the Fleet Reserve for eight years. During his time in the Fleet Reserve, he physically resided in North Carolina and was employed in various capacities in the juvenile programs in that state. Upon reaching the 30 years' service, he fully retired from Naval service and, in August 2001, permanently resumed physical residency in American Samoa. Sualevai testified that he was subject to immediate recall to active duty at any time during Fleet Reserve service and that this military service, as such, did not constitute retirement. His explanation of the status of Naval personnel in the Fleet Reserve under this program was uncontroverted. Therefore, for purposes of this action, we hold that he comes within the military service exception.

■ However, Sualevai did not record his military status with the Territorial Registrar and renew the record of his continuing military status every two years, as required by A.S.C.A. §§ 1.0404(b) and (d). Such recordation is mandated and therefore necessary to recognition of the military service exception. Thus, Sualevai was ineligible to claim the title, and the motion to dismiss his claim is properly granted. *See, e.g., In re Matai Title Fonoti*, 20 A.S.R.2d 22, 24 (Land & Titles Div. 1991); *In re Matai Title Afoafouvale*, 4 A.S.R. 145, 147-48 (Land & Titles Div. 1975).

Nonetheless, for the Laolagi family members' awareness and future guidance, we will include findings with respect to Sualevai's testimony as a witness on the mandated best hereditary right and clan wish statutory factors that the Court must assess in awarding contested *matai* titles. However, because Sualevai is ineligible to presently seek the Laolagi title, we will appropriately exclude him from our findings and conclusions on the third and fourth criteria dealing with the two remaining claimants' personal traits for succeeding to the title.

## II. The Mandated Statutory Directions

In resolving disputed claims to a *matai* title, the Court must appraise the claimants' qualifications in four statutorily prescribed areas of consideration, evaluated according to their assigned priority. A.S.C.A. § 1.0409(c). The four factors are: (A) the best hereditary right among the claimants; (B) the wish of the majority or plurality of the clans customary in the family for the claimants; (C) the claimants' relative forcefulness, character, personality, and knowledge of Samoan custom; and (D) the claimants' relative value to the family, village, and country. *Id.* The Court must issue written findings of fact and conclusions of law on each of the four issues. A.S.C.A. § 1.0409(d).

### A. Hereditary Right

On this issue, A.S.C.A. § 1.0409(c)(1) directs the Court to determine "the best hereditary right, as to which the male and female descendants are equal in families where this has been customary; otherwise, the male descendant prevails over the female."

■ The Court has fashioned two different basic approaches in evaluating claimants' hereditary rights. The so-called traditional rule determines the blood percentage based on each claimant's closest relationship to a previous titleholder. *In re Matai Title Tuaolo*, 27 A.S.R.2d 97, 99 (Land & Titles Div. 1995). More recently adopted, the so-called Sotoa rule calculates the blood percentage from the original or a successor titleholder, or even an ancestor, commonly accepted by all claimants. *Id. at n.1.* This approach provides fairer comparison of the claimants

181

particularly when there are claimants in a blood line that has not had a titleholder for several generations by usually resulting in equal or closer to equal blood connections among the claimants. *In re Matai Title Lolo*, 25 A.S.R.2d 175, 176 (Land & Titles Div. 1994).

Ali`ilelei is the son of Laolagi Tusapa, and under the traditional nearest titleholder rule, the degree of his hereditary right is 50%. Fonoti is the great, great, great grandson of Laolagi Auega and being five generations removed from a titleholder, the degree of his hereditary right under this rule is 3.125%. Sualevai is also a great, great, great grandson of Laolagi Auega and has the same hereditary right of 3.125%. Clearly, under this approach, Ali`ilelei has the best hereditary right among the three claimants to the Laolagi title in this case.

▌ Because of the remote but equal blood connection to a previous titleholder claimed by Fonoti and Sualevai, we should consider whether to apply the Sotoa rule in this case. Unfortunately, this approach is beyond our reach. Each of the three claimants identifies a different original titleholder in his family history. Moreover, they do not recognize a successor titleholder who they accept as common to all of them. Fonoti and Sualevai list a former titleholder, Laolagi Auega, common to both of them, but Ali`ilelei does not recognize Auega as a titleholder. The three claimants do identify a titleholder named Laolagi Akai or Laolagi Hakai, but they differ materially on this titleholder's position in the line of succession and Sualevai does not place him in his blood line.

Clearly, we must resort to the traditional rule on hereditary right, and based on this rule, Ali`ilelei unquestionably has the best hereditary right to the title among all three claimants. Specifically, Ali`ilelei has a greater hereditary right to the title than Fonoti, the other remaining claimant. Ali`ilelei prevails on this criterion.

B. Wish of the Family Clans

A.S.C.A. § 1.0409(c)(2) requires the Court to determine "the wish of the majority or plurality of those clans of the family as customary in that family."

▌ The traditional basis for support rests upon the consensus within each of the family's customary clans. *In re Matai Title Le`aeno*, 24 A.S.R.2d 117, 120 (Land & Titles Div. 1993). The traditional designation of family clans is based on the children of the original titleholder. *In re Matai Title Misaalefua*, 28 A.S.R.2d 106, 109 (Land & Titles Div. 1995). The three claimants give some but not complete credence to this means of identifying the Laolagi clans. However, because they disagree on the

original titleholder's identity, they do not consistently recognize the family's clans.

According to Ali`ilelei's family history, he considers the original family clan to be named Mati, based on his original titleholder Laolagi Sea's only child, a daughter named Mati. Mati in turn had one son, Puia`i, and two daughters, Tulolo and Faauna, who Ali`ilelei claims to be the progenitors of the three presently operative clans of the family. He maintains to have the support of the Puia`i and Tulolo clans.

Fonoti has another version of family history. He understands the family presently has three clans. One is named Auega after his original titleholder Laolagi Akai's only son. The other two are named Fonoti and Tusapa, apparently having their respective origins with Laolagi Fonoti and Laolagi Tusapa, the first two titleholders registered with the Territorial Registrar. Fonoti claims to have the support of the Auega and Fonoti clans.

Sualevai's family history tells a different story. He claims that his original titleholder Laolagi Puni had only one child, a son named Matua, and that the family now has two clans, named Matua and Tusapa. The origin of the Tusapa clan apparently stems from Ali`ilelei's father, Laolagi Tusapa. Sualevai claims to have the support of the Matua clan.

Under the state of the evidence presented, we can find that the Laolagi family presently has either two or three operative clans. However, we are unable to determine by a preponderance of the evidence whether the Laolagi family has two or three clans, or the names of the actual clans. Clearly, however, none of the claimants has the consensus support of a majority or plurality of the family's clans, which in either case requires the support of two clans. The strongest and most credible clan support evidence comes from the reports of two meetings directed by the Court, essentially verified during the trial.

■ On November 14, 2002, the initially scheduled trial date, we granted Sualevai's motion to return the successor selection process back to the family to hold meaningful meetings for this purpose. As a result of the evidentiary hearing on the motion, we found, in essence, that the entire Laolagi family had not met for this purpose, and the incumbent holder of the Sualevai title is the proper person to call such meetings when the title is vacant. We require families to conduct meaningful successor *matai* selection meetings before proceeding with judicial resolution of a *matai* controversy. *See In re Matai Title Taliaaueafe*, MT No. 9-98, Order on Motion to Dismiss (Land & Titles Div. Oct. 12, 1999). We directed Sualevai to call one or more meetings to seek the family's meaningful selection consideration of the next Laolagi titleholder and to report back

on February 14, 2003. The bench order was confirmed by the Court's written amended order of December 17, 2002.[1]

Sualevai initiated notice of the family meeting to discuss and select the successor to the vacant Laolagi title held on February 1, 2003, at his residence in Fogagogo. At the court hearing on April 10, 2003, Sualevai's report on the February 1 family meeting essentially indicated that the family did indeed have a meaningful meeting and was unable to reach a consensus decision on the next Laolagi titleholder. Most family members accepted the need for further family dialogue at another meeting. We agreed to this request at a status hearing on April 10, 2003. Sualevai noticed the second meeting held on August 16, 2003, at his guesthouse in Tafuna. This meeting was not as well attended as the February meeting. However, though the family members present indicated a preference to withdraw the decision from judicial determination to facilitate renewed family meetings until a successor was chosen, they eventually agreed to have the three claimants decide upon which one of them would succeed to the title and if they failed to resolve the issue to request withdrawal of the judicial action in favor further family deliberations. However, the three claimants did not meet before the status hearing scheduled on October 9, 2003.

Based on the presentations at the October 9 court hearing, the failure of the three claimants to meet was largely attributed to lack of adequate pre-meeting communications between them. In any event, the three claimants clearly preferred not to dismiss this action and to proceed to trial unless the family could reach a decision on the successor before the next trial date. Trial was then scheduled to begin on March 11, 2004, but on March 10, 2004, the three counsel agreed to continue the trial to April 15, 2004, to afford Ali`ilelei's new counsel time to prepare.

■ The evidence adduced during the trial essentially confirmed our reading of the bottom-line results of the two family meetings and the claimants' conviction that judicial selection of the next Laolagi titleholder is necessary. It is apparent that the Laolagi family has undertaken serious and meaningful discussions both to attempt reaching a decision on filling the current vacancy in the Laolagi title and to revitalize family processes generally. However, two clans of the family, constituting the necessary majority or plurality of the clans, have not reached a consensus that would result in selection of the successor *matai*. It is highly unlikely that the family will agree upon the next Laolagi

---

[1] The motion to disqualify Sualevai as a present candidate for the Laolagi title and dismiss his immediate claim to the title also came for hearing on November 14, 2002. The Court deferred the hearing and ruling on this motion, and ultimately, as indicated above, considered the motion based on the evidentiary support for it during the trial in April 2004.

titleholder in the foreseeable future. Neither Ali`ilelei nor Fonoti prevails on the clan wish criterion.

## C. Forcefulness, Character, Personality, and Knowledge of Samoan Customs

Under A.S.C.A. § 1.0409(c)(3), we must evaluate "the forcefulness, character and personality of the persons under consideration for the title, and their knowledge of Samoan customs"

■ Fundamentally, for purposes of determining the third and fourth criteria, each claimant's attributes must be first assessed on an individualized basis before any comparison of the claimants can be appropriately made. The third criterion essentially deals with the inner strength of the claimants. The fourth criterion of value to family, village and country pertains to the projection of their inner selves for the family's community benefit. The conclusions reached on both criteria are inherently subjective, but they are manifested by the claimants' objective achievements and witness demeanor. The same type of evidence is usually relevant as the basis for the subjective interpretations required in deciding both criteria. We will therefore first describe the respective highlights of Ali`ilelei's and Fonoti's lifetimes to this point in time.

Ali`ilelei at age 66 is a mature and still active senior. He was educated through high school and some community college levels. He served in and is now retired from the U.S. Navy. His service included wartime duty in Vietnam. He has operated several business enterprises in California and American Samoa over the years. Ali`ilelei has physically resided in the Manu`a Islands beginning in 1988. He is a deacon in his church there and operates a small motel in Olosega and retail store in Sili. He regularly assists Sili's *pulenu`u* ("mayor"), participating in public road maintenance and other public projects in the village in the absence of any routine territorial Department of Public Works assistance. In 1987-1988, Ali`ilelei was tirelessly involved in and with the Federal Emergency Management Administration during the recovery efforts after the devastating hurricane struck the Manu`a Islands. He was similarly involved in the recovery after the floods of May 2003. He has provided food and lodging for a tourism promotion film group from outside the Territory. He was during the 1990s, and is again currently, on the local staff of American Samoa's Member of Congress. His monthly income is sufficient to support *matai* and other obligations. Ali`ilelei is not a *matai*, because, he claims, of lack of opportunity to take on a vacant title in the Laolagi family. However, he regularly participates in Manu`a *fa`alavelave* ("family events") and has adequate knowledge of Samoan customs, particularly those of his family and village. He recognizes the

185

need to restore the unified spirit of the Laolagi family and the families having Sili origins.

Fonoti at age 38 is young and vigorous. He is a college graduate. He was the starting quarterback of his high school football team for two undefeated seasons and became the starting quarterback of his college team. He also coached college football before returning to American Samoa to be a high school teacher and football coach. He has had experience as a correctional officer in Oregon and in youth programs both there and here. Representing District No. 2, encompassing Ofu, Olosega, and Sili in the Manu`a Islands, Fonoti has served several terms as and is currently an elected member of the House of Representatives in Legislature of American Samoa. He has been, and is now, on a variety of significant legislative and executive branch committees, boards and commissions. Fonoti is also active in church affairs, as a deacon and treasurer. He and his wife have sufficient income to support their personal needs and *matai* obligations. He has been a *matai* for the past three years, holding the title Fonoti of the Laolagi family. Fonoti also regularly participates in Manu`a *fa`alavelave*. He is well-versed in the Samoan customs of his family, village and district. Fonoti also appreciates the need to restore the vitality of the Laolagi family and Sili village.

Both Ali`ilelei and Fonoti share a common concern over bringing the family back together. Sili has been frequently devastated as a result of storms. As a consequence, members of its traditional families, including the Laolagi family, have dispersed to other locations and taken other paths. The Laolagi family has also been without a *sa`o* ("head chief") to lead the family for about 11 years now following the death of Laolagi Soli, the last titleholder. The Laolagi title is the highest title in Sili. It is also one of the ranking *faatui* titles of singular importance in the Manu`a Islands. Ali`ilelei and Fonoti want to restore the leadership role of the Laolagi title and revitalize the family and village. The Sili Village Resource Conservation and Development Council, a non-profit corporation, was incorporated in 2002 as one significant step to accomplish this end. Fonoti was an incorporator of this corporation and actively participates in its efforts.[2]

When we compare the characteristics and attributes that Ali`ilelei and Fonoti would bring to the Laolagi title, we conclude that Fonoti has a decided advantage in the third criterion. Fonoti has the more charismatic personality. He is more outgoing and gregarious. Fonoti has demonstrated greater leadership qualities and is clearly more forceful. We do not question Ali`ilelei's integrity. However, Fonoti comes across

---

[2] We note for the record that Sualevai was also an incorporator and actively participates in Council's affairs.

as having greater moral strength of character. He also showed superior knowledge of Samoan customs, particularly those customs pertaining to the Manu`a Islands district in addition to those of the Laolagi family and Sili village.

Fonoti prevails significantly over Ali`ilelei on the criterion of forcefulness, character, personality, and knowledge of Samoan customs.

D. Value to Family, Village and Country

Under A.S.C.A. § 1.0904(c)(4), we must appraise "the value of the holder of the title to the family, village, and country."

Ali`ilelei has the advantage over Fonoti of age, maturity, and perhaps the accompanying wisdom expected of senior citizen status. He also has resided in Sili for many recent years and may have more intimate knowledge than Fonoti of the immediate concerns of the few persons currently living there. He certainly has a solid background of public service through his lengthy experience in the U.S. armed forces.

On the other hand, though Fonoti is still a relatively young man, he has achieved considerable accomplishments. He does not lack the maturity needed to head the family. He has a wealth of leadership experience from his youthful days as an athlete, carried forward as a teacher, coach, and participant in other youth programs. His role as a member of the territorial House of Representatives also demonstrates leadership capacities, as well as current and significant involvement in public affairs. Fonoti knows his family members from the perspective of his *matai* experience and regular participation in the affairs of both his family and other families in the Manu`a Islands. He has a better command of Samoan customs, particularly at the Manu`a Islands district level.

In sum, Fonoti, having notably stronger leadership qualities, is better positioned to be the next leader of the Laolagi family. His value to the family, village, and country is significantly greater than Ali`ilelei.

## III. Priority Analysis

█ A.S.C.A. § 1.0409(c) assigns priority to the four criteria in the order listed. More weight is given to each criterion than to those following it, taking into account the relative margins by which claimants may win on each of the four categories. *In re Matai Title Tauala*, 15 A.S.R.2d 65, 69-70 (Land & Titles Div. 1990).

Under the traditional blood connection rule, Ali`ilelai clearly prevails over Fonoti on the first priority best hereditary right because he is the son

of a former Laolagi titleholder. We temper this result some in light of the five generation gap of a Laolagi titleholder in Fonoti's blood line. We also discount the second priority clan wish criterion in the absence of any evidentiary preponderance of majority or plurality clan support for either Ali`ilelei or Fonoti. Fonoti markedly prevails over Ali`ilelei in personal characteristics and knowledge of Samoan customs, the third priority criterion, and in Fonoti's prospective value to the Laolagi family, Sili village, and the Territory, the fourth priority criterion. Fonoti's superior credentials in the third and fourth criterion substantially outweigh Ali`ilelei's better hereditary right to the title.

We therefore award the *matai* title Laolagi to Fonoti.

## Order

1. Sualevai was ineligible to claim the Laolagi title at the time he filed his claim for the title with the Territorial Registrar. The motion to dismiss his claim is therefore granted.

2. The Laolagi title is awarded to Fonoti Savali Vaeao. The Territorial Registrar shall register the Laolagi title in Fonoti's name, provided that he has resigned from and in not holding any other registered title.

It is so ordered.

